U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JUL 1 6 2012

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus                                    CRIMINAL NO. 08-0302-01
                                          JUDGE TOM STAGG

MARLOW DEWAYNE ASHLEY

## MEMORANDUM RULING

Before the court is a motion filed by Marlow Dewayne Ashley ("Ashley")

pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside or correct his sentence. See

Record Document 93. Based on the following, Ashley's motion is **DENIED**.

## I. BACKGROUND

### A.    Factual Background.

On September 30, 2008, Markiya Atkins ("Atkins") purchased a single, one-

way ticket for a bus trip to Shreveport, Louisiana, from the ticket agent at the

Kerrville Bus Company in Humble, Texas.  Ashley was with Atkins at the ticket

counter when she presented her Louisiana driver's license and paid cash for the ticket.

See Record Document 81 at 81-82.  The couple requested a claim form for the one

bag they wanted to check.  See id. at 83.  Testimony at trial by the ticket agent for

Kerrville indicated that Ashley instead of Atkins boarded the bus to Shreveport.  The

ticket agent testified that Ashley got onto the bus carrying a small bag and a white plastic bag. The ticket agent later saw Atkins sitting in her vehicle after the bus left the station en route to Shreveport. See id. at 85.

Sergeant Carl Townley with the Caddo Parish Sheriff's Office was working for the Caddo-Shreveport Mid Level Narcotics Unit at the Greyhound Bus Station in Shreveport, on the evening of September 30, 2008. He had received information that two subjects from Humble, Texas, were possibly involved in narcotics activity. He was told a black male would be traveling on the bus from Humble wearing blue jeans, t-shirt, a white baseball cap, and a wristwatch with a very large white band. He was also told that the other person would be driving a silver Chrysler 300 and was provided the license plate number for that vehicle. See id. at 97-98 and 100. Officers arrived at the bus station at approximately 6:30 p.m. in order to be at the station when the Humble bus arrived at 7:15 p.m. See id. at 100. At approximately 6:55 p.m., the officers saw the Chrysler 300 pull up on Edwards Street, next to the bus station, as if the person inside the car was waiting on someone to get off a bus. See id. at 101. The Humble bus arrived in Shreveport at 7:30 p.m. and five to six passengers got off the bus with only one person matching the description provided the officers. See id. at 101-102. This person was acting very nervous, looking back and forth as if he were looking for someone, and trying to contact someone on his cell phone as he was

2

leaving the bus station. See id. at 103. The only luggage removed from the bus was a black roller bag and a cardboard box. These were taken to the baggage handling area in the back of the bus station where a K-9 unit was waiting. The K-9 certified dog made a positive indication for narcotics on the black roller bag from the bus. See id. at 103-104. After Sergeant Townley made sure that no one tried to claim the luggage, he opened the bag. Inside the bag, he found a dryer sheet box taped with black electrical tape. Inside the dryer sheet box was crack cocaine and powder cocaine wrapped in dryer sheets and covered with mustard. See id. at 106-107. Sergeant Townley estimated that there was approximately 240 days worth of cocaine in the bag, an amount indicative of distribution and not personal use. See id. at 109.

Sergeant Townley then advised the other officers to "keep an eye" on the black male that had exited the bus and walked away from the bus station earlier because cocaine had been discovered in the bag. Officers located Ashley in the 400 block of Texas Street, just a few blocks from the bus station. Sergeant Townley read Ashley his Miranda rights and did a pat-down search of his person. See id. at 110. In the plastic bag Ashley was carrying, the officers found the watch with the large white wrist band. Ashley told the officers that he did not have any identification on him at that time and he denied knowing Atkins. He also denied knowing anything about a silver Chrysler 300. He then allowed the officers to look at his cell phone, and they

3

discovered several text messages between him and Markiya Atkins. See id. at 111-113.

Sergeant Townley returned to the bus station and parked behind Atkins's silver Chrysler just as she had pulled into a parking space. He watched as she got out of her Chrysler, went into the bus station and plugged her cell phone into the wall to attempt to charge it. See id. at 113. Sergeant Townley and the other officers approached Atkins, and she refused to provide them her name. She told the officers that she had walked to the bus station and did not have a vehicle. She also denied knowing Ashley. See id. at 114-115. The officers then obtained consent to look at her phone and they found the same text messages that were on Ashley's cell phone. They also discovered several other text messages between Atkins and Ashley tracking the travel from Humble, Texas, to Shreveport, Louisiana. See id. at 115, 145-148.

**B.    Procedural History.**

On October 22, 2008, a federal grand jury returned a four count indictment against Ashley. Ashley was charged in count one of the indictment with conspiring to distribute and to possess with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count two charged him with possession with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Count three of the indictment charged Ashley with

4

conspiring to distribute and to possess with intent to distribute powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count four charged Ashley with possession with intent to distribute powder cocaine, in violation of 21 U.S.C. § 841(a)(1). See Record Document 11.

On November 11, 2008, and January 6, 2009, the government filed Notices of Prior Narcotics Conviction pursuant to 21 U.S.C. § 851, alleging four prior felony drug convictions. These prior drug convictions increased Ashley's penalty for counts one and two of the indictment to a mandatory life sentence and a sentence of up to thirty years for counts three and four. See Record Documents 28 and 52. A jury trial was held January 6 and 7, 2009. See Record Documents 53 and 56. After the government rested at the trial, the defendant moved for a Rule 29 motion for judgment of acquittal. Defense counsel contended that there was not sufficient nor proper evidence submitted to the jury during the trial to sustain a conviction. See Record Document 81 at 153. The court denied the motion. See id. at 155-156. After the Rule 29 motion was denied, counsel for the defendant requested permission to have Ashley try on the clothes that were in the suitcase with the drugs. The court denied admission of that evidence as irrelevant. Defense counsel objected to the court's ruling. See id. at 164-165. Defense counsel also objected to the evidence presented by the government pursuant to Rule 404(b) regarding another incident when the defendant

5

was transporting crack cocaine on a bus from Houston to Shreveport. See id. at 63-71. The court instructed the jury concerning the limited purposes they could consider this evidence of the earlier offense. See id. at 75-76. The jury found Ashley guilty of all four counts. See Record Document 59.

Ashley's sentencing was originally scheduled for March 30, 2009, but was reset for April 13, 2009. See Record Document 66. Ashley was sentenced to a life sentence as to counts one and two and a thirty year term of imprisonment as to counts three and four, all running concurrently. See Record Document 70. Ashley timely filed his appeal of the conviction. See Record Document 71. On March 25, 2010, Ashley's conviction was affirmed by the United States Court of Appeals for the Fifth Circuit. See Record Document 90. Thereafter, Ashley filed the instant motion. See Record Document 93.

## II. LAW AND ANALYSIS

Ashley brings several claims alleging he received ineffective assistance of counsel prior to trial, at trial or at sentencing in this section 2255 motion. Specifically, Ashley asserts his counsel's failure to: (1) preserve his right to challenge the grand jury proceedings; (2) object to defects in the indictment with respect to charging the essential elements of the offense; (3) advise him of the life sentence he faced; (4) object to the notices of prior conviction under 21 U.S.C. § 851; (5) require the court

6

to choose or to state which two of the four prior convictions triggered his mandatory life sentence; (6) require that he be sentenced under the Fair Sentencing Act; (7) object to the amount of cocaine testified to at trial; (8) move for dismissal for lack of corroborating evidence that the drugs belonged to him or that he was "connected to the drugs"; (9) move for dismissal for violation of his Miranda rights; (10) object to the witness's in-court identification of him; (11) move for a mistrial when an officer testified about a previous incident and arrest; (12) object or move to dismiss the conspiracy charge when he was the only person charged in the conspiracy; (13) object to his criminal history score; (14) move for an offense level calculation equating crack cocaine with powder cocaine on a 1:1 ratio; (15) object to the marijuana used in calculating his offense level; (16) object to the racial mix of the jury; and (17) adequately investigate.

To prevail on a claim of ineffective assistance of counsel, Ashley must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689,

7

104 S. Ct. at 2065. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the Strickland test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To show a reasonable probability, a defendant must demonstrate that the error is one "which renders the proceeding unfair or unreliable, i.e., undermines confidence in the outcome." United States v. Williamson, 183 F.3d 458, 463 (5th Cir. 1999).[1] If Ashley fails to establish either prong of the Strickland test, then his claim of ineffective assistance of counsel must fail.

---

[1]To satisfy the prejudicial prong of the Strickland test in the context of a non-capital sentencing proceeding, Ashley must establish that he would have received less time in prison. See United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004). Previously, the prejudice test for ineffectiveness relating to the amount of a sentence in the Fifth Circuit was whether, but for counsel's actions, there was a reasonable probability that defendant would have received a "significantly less harsh" sentence. The Supreme Court later determined in Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696 (2001), that "any amount of actual jail time has Sixth Amendment significance." Thus, the Fifth Circuit now holds that "Glover abrogates the significantly less harsh test, and that any additional time in prison has constitutional significance." Grammas, 376 F.3d at 438.

A.    **Grand Jury And Indictment**.

Ashley claims that the Grand Jury did not convene and the government merely wrote out the indictment.  Ashley asserts that the copy of the indictment he received did not have a signature of the foreperson of the Grand Jury nor the date that it was handed down, only the words "a True Bill".  Ashley claims that his counsel failed to preserve his right to challenge the Grand Jury proceedings and to object and file the appropriate motions to ensure the indictment was handed down appropriately.

"Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a 'motion alleging a defect in the indictment' must be made before trial.  Failure to comply with this rule generally constitutes waiver." United States v. Whitfield, 590 F.3d 325, 359 (5th Cir. 2009) (quoting United States v. Cathey, 591 F.2d 268, 271 n. 1 (5th Cir. 1979)).  The court may excuse for "good cause" a defendant's failure to timely file a motion.  See Fed. R. Crim. P. 12(e).  Ashley has failed to demonstrate that his counsel's alleged failure to preserve his right to challenge any impropriety resulted in prejudice to him.  He has also failed to show "good cause" for the court to consider this issue.

Ashley also claims that no valid indictment existed against him.  He alleges that his trial counsel was ineffective for failing to object to these alleged defects.  Ashley contends that his indictment was defective because it did not contain the term

9

"willfully" in each count and the entire citation of the statute was not included in counts one and two. However, none of the offenses charged in the indictment requires "willful" action, only the terms "knowingly" and "intentionally." These words track the language of the statute. The indictment charges a violation of 21 U.S.C. § 841(a)(1) and any further designation of subparagraphs and subsections are unnecessary for the purpose of sentencing.

Ashley claims that since no valid indictment existed against him, this court lacked jurisdiction. The jury found, as stated in the indictment, that Ashley possessed with intent to distribute "50 grams or more . . . of crack cocaine." The statutory range for sentencing falls within 21 U.S.C. § 841(b)(1)(A), but the mandatory life sentence as to counts one and two resulting from his prior convictions supercedes the guidelines range. In United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002), the Supreme Court held that any Apprendi error stemming from the absence of drug quantity in an indictment does not deprive the court of jurisdiction. See United States v. Longoria, 298 F.3d 367, 372 (5th Cir. 2002) (en banc).

Ashley has failed to show any error by his trial counsel that rendered ineffective representation regarding the grand jury and indictment. Therefore, these claims must fail.

10

**B.      Pretrial.**

Ashley further claims that his attorney failed to object to the notices of sentence enhancements filed pursuant to 21 U.S.C. § 851. The government filed notices pursuant to 21 U.S.C. § 851 that Ashley had at least two prior narcotics convictions. See Record Documents 28 and 52. Even though Ashley's total offense level of 32 with a criminal history category of V resulted in an imprisonment range of 188 to 235 months, the mandatory life sentence as to counts one and two resulting from his prior convictions superceded the guideline range. Section 851(a)(1) states in pertinent part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon.

Ashley's trial was held January 6, 2009. The government filed notices pursuant to 21 U.S.C. § 851 on November 10, 2008, and again on January 5, 2009, which gave ample notice to Ashley that the government was seeking an enhancement in his sentence. Ashley has failed to show any error in either of the section 851 notices or what his attorney could have done to object to the notices.

Ashley also asserts that his attorney did not adequately investigate his case because the attorney failed to obtain a copy of the video from the bus station and

11

failed to investigate the character of the witnesses. In <u>Strickland</u>, 466 U.S. at 691, 104

S. Ct. at 2066, the Supreme Court stated:

> [C]ounsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations unnecessary. In
> any ineffectiveness case, a particular decision not to investigate must be
> directly assessed for reasonableness in all the circumstances, applying
> a heavy measure of deference to counsel's judgments.

"So long as counsel made an 'adequate investigation,' any strategic decisions made

as a result of that investigation fall within the wide range of objectively reasonable

professional assistance." <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002)

(citation omitted), <u>overruled on other grounds by</u> <u>Tennard v. Dretke</u>, 542 U.S. 274,

283, 124 S. Ct. 2562, 2569-2570 (2004). In this case, Ashley points to nothing in the

record to evidence his claim that an adequate investigation was not had. However,

even if his assertion is taken as true, Ashley must still demonstrate that his counsel's

alleged failure resulted in prejudice to him. <u>See</u> <u>Lockhart v. McCotter</u>, 782 F.2d

1275, 1282 (5th Cir. 1986). Ashley has failed to do so. He has not pointed to any

particular evidence or testimony which might have been gleaned from further

investigation. Nor has he demonstrated that "there is a reasonable probability that, but

for counsel's failure to investigate, the result of the proceeding would have been

different." <u>Murray</u>, 736 F.2d at 282. Therefore, Ashley's claim of inadequate

investigation fails.

## C.    Trial.

Ashley complains that his counsel was ineffective during the trial because he failed to object to the testimony regarding the difference in the amounts of crack cocaine and powder cocaine shown in the lab report and the testimony of the agent. However, Ashley has failed to prove that in doing so, his attorney acted outside the scope of professionally competent assistance. Ashley has put forth no evidence that there was a factual basis for such an objection in this case, and his attorney can hardly be faulted for failing to make a baseless objection. See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a "frivolous" issue); Murray, 736 F.2d at 283. This claim is without merit.

Ashley also challenges the testimony of Agent Townley concerning his Miranda rights. Agent Townley testified at trial that immediately after he discovered the cocaine in the bag at the bus station, he contacted another agent and asked that he keep an eye on Ashley, who had walked a couple of blocks away from the bus station. Agent Townley further testified that he read Ashley his rights, did a pat-down of his person and looked into the plastic bag that Ashley was carrying.    See Record Document 81 at 109-110.

13

Ashley has failed to establish that he was not given his Miranda rights. Furthermore, Ashley did not make any inculpatory statements. Ashley cannot demonstrate that "but for" the statements that he did make (that he had no identification, that he did not know Atkins, that he did not know anything about a silver Chrysler 300, and that he consented to the viewing of his cell phone) he would not have been convicted at trial or that the statements were obtained in violation of his rights. Ashley has failed to demonstrate that his counsel's actions fell below an objective standard of reasonableness or that he was prejudiced.

Ashley also alleges his counsel was ineffective for failing to object to the in-court identification of him by the ticket agent for Kerrville. Ashley argues that his identification followed an impermissibly suggestive photographic lineup since only one photograph was shown to the ticket agent. Ashley further contends that the identification was tainted and resulted in a very substantial likelihood of irreparable misidentification and that the ticket agent should not have been permitted to make an in-court identification of him.

The Due Process Clause protects accused individuals from the use against them of evidence derived from unreliable identifications that resulted from impermissibly suggestive procedures. See Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243 (1977); United States v. Sanchez, 988 F.2d 1384, 1389 (5th Cir. 1993). The

14

admissibility of identification evidence is governed by a two-step inquiry--first, whether the identification procedure was impermissibly suggestive and second, whether the procedure posed a "very substantial likelihood of irreparable misidentification." Sanchez, 988 F.2d at 1389 (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). If the answer to both questions is yes, the identification is not admissible. "The gravamen of the determination is fairness and reliability." Sanchez, 988 F.2d at 1389.

The Supreme Court in Manson made clear that exhibiting a single photograph for identification purposes is impermissibly suggestive. See Manson, 432 U.S. at 108-09, 97 S. Ct. at 2249-50; see also Sanchez, 988 F.2d at 1389 (citing Manson). Thus, this court must move to the second prong of the test to consider the reliability of the identification.

The five factors to be considered in determining the likelihood of misidentification are: (1) the opportunity of the witness to observe the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's level of certainty; and (5) the time between the crime and the identification. See Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972). These factors are to be weighed against the corrupting effect of the suggestive

identification. See Manson, 432 U.S. at 114, 97 S. Ct. at 2253; United States v. Watkins, 741 F.2d 692, 693-94 (5th Cir. 1984).

Here, the ticket agent had a good opportunity to view and talk with Ashley. She was in a face to face encounter with Ashley and Atkins. The ticket agent testified in court that Atkins purchased the ticket in her name with cash . Both Ashley and Atkins indicated that they only had one bag to check. See Record Document 81 at 82. Both Ashley and Atkins left the bus station and later returned in order to board the bus. The ticket agent noticed that Ashley, not Atkins boarded the bus. See id. at 84. Even if the ticket agent had not been able to identify Ashley in the courtroom, Ashley was the only person to board the bus in Humble. The description of Ashley given to the officers in Shreveport was sufficient to tie Ashley to Humble to the suitcase which was checked in at the station in Humble by Atkins and Ashley.

As to the fourth factor, there was no hesitation in the ticket agent's recognition of Ashley and she was positive with her identification of Ashley. She did indicate that she was shown a photograph of Ashley the night before trial but it was also apparent at trial that this witness was extremely observant. Likewise, the time between the crime and the confrontation supports admissibility. The photographic identification occurred less than six months after the crime. This time period is not significant enough to render the ticket agent's identification of Ashley unreliable. See Neil, 490

16

U.S. at 199, 93 S. Ct. at 382 (identification which occurred seven months after the crime was not unreliable); McFadden v. Cabana, 851 F.2d 784, 790 (5th Cir. 1988) (identification which occurred a "few weeks" after the crime was reliable).

These indicators of the ticket agent's ability to make an accurate identification are hardly outweighed by the corrupting effect of the challenged identification itself. Although identifications arising from single-photograph displays may be viewed in general with suspicion, in the instant case there was little pressure on the witness to acquiesce in the suggestion that such a display entails. See Simmons, 390 U.S. at 383, 88 S. Ct. at 970-71. This is not a case wherein under all of the circumstances there is "a very substantial likelihood of irreparable misidentification." Id., 390 U.S. at 384, 88 S. Ct. at 971. Short of that point, such evidence is for the jury to weigh. This court is "content to rely upon the good sense and judgment of an American jury, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Manson, 432 U.S. at 116, 97 S. Ct. at 2254. The defect, if there be one, goes to weight and not to substance. See id. Accordingly, this claim of Ashley's must also fail.

Ashley's motion also alleges that his counsel failed to renew the Rule 29 motion after all the evidence had been presented at trial. However, Ashley previously

raised this issue on appeal without success. It is well established that issues disposed of by a previous appeal cannot be properly raised in a section 2255 motion. See United States v. Rocha, 109 F.3d 225, 229-30 (5th Cir. 1997). Therefore, Ashley's claim of counsel's failure to renew a Rule 29 motion is not cognizable.

Another of Ashley's claims is that his counsel failed to object or move for a mistrial when a police officer from Texas testified regarding a prior incident and arrest of Ashley. He also alleges that the evidence regarding this arrest was not properly admitted under Federal Rule of Evidence 404(b). This claim was also raised by Ashley in his direct appeal and cannot be properly raised in a section 2255 motion. See id. Thus, this claim is also not cognizable.

**D.  Sentencing.**

Ashley claims that his trial counsel failed to require the court to stipulate which of the four prior convictions were being used to trigger his mandatory life sentence. Ashley is attempting to the do the very thing that the court advised him he would be unable to do, that is to attack the convictions used to enhance his sentence. He asserts that the Jasper County conviction was only a misdemeanor. Even if this were true and the Jasper County conviction was a misdemeanor, Ashley has three Louisiana convictions and only two are necessary to trigger the mandatory life sentence. The court and Ashley had the following exchange regarding his prior convictions:

18

Ashley:      I acknowledge I had a prior.

Court:       All four of them – or two of them?  It doesn't matter; the
             law says two or more, and we have four.  So you acknowl-
             edge that you were convicted on the date shown on these
             Exhibits 1, 2, 3, and 4?

Ashley:      I'm not saying they was truthful, but I got the prior.

Court:       You got them; you know that you have them?

Ashley:      I know I have them.

Court:       That's a better answer: I know I have them.  And you know
             you didn't challenge them in this court as being incorrect
             before today?

Ashley:      Yes.

Court:       You acknowledge that?  Because it says there that I have to
             inform you – I have to inform Marlow Ashley – that any
             challenge to a prior conviction which was not made before
             sentence is imposed may not thereafter be raised to attack
             the sentence.  In other words, you can't attack what I do
             today because of what happened back here in Monroe and
             Jasper County, Texas.  You got it?

Ashley:      Yes, sir.

Record Document 84 at 7-8.

Ashley also argues that his counsel was ineffective for failure to raise at the

sentencing the applicability of the "cocaine sentencing disparity reduction." Record

Document 93 at 10. Ashley claims this failure caused an increase in the amount of

19

crack cocaine from 50 grams to 280 grams of crack which triggered his mandatory life sentence under 21 U.S.C. § 841(b)(1)(A). Ashley also quotes a provision in the Federal Sentencing Act of 2010 ("FSA"), noting the "cocaine sentencing disparity reduction" of 2007. The FSA had not yet been enacted when Ashley was sentenced. The FSA became effective on August 30, 2010, well over a year after Ashley was sentenced on April 13, 2009. Ashley was sentenced to the statutory minimum on the date he was sentenced.

Ashley asserts several other issues regarding his counsel's representation during sentencing. All of these assertions are without merit. Ashley was sentenced to the mandatory life terms on counts one and two and to the thirty-year terms on counts three and four, all running concurrently. His sentence is a mandatory statutory sentence dictated by 21 U.S.C. § 841(b)(1)(A). Ashley has simply not met his burden, and therefore all of his claims of ineffective assistance of counsel at sentencing must fail.

**E.   Other Claims.**

Ashley has also raised a number of other claims based upon his attorney's ineffective assistance of counsel. However, like those claims discussed above, none of these survive the test set forth in <u>Strickland</u>. Ultimately, Ashley has failed to satisfy either prong of the <u>Strickland</u> test. As to cause, he has neglected to present any

20

evidence to overcome the presumption that his attorney's actions were encompassed within the wide range of reasonable competence and fell under the ambit of strategy. As to prejudice, he has presented no evidence establishing that his attorney's actions were so serious as to render the proceedings unreliable and fundamentally unfair. Accordingly, all of Ashley's ineffective assistance claims are without merit.

### III. CONCLUSION

For the above cited reasons, Ashley's section 2255 motion (Record Document 93) is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 13 day of July, 2012.

JUDGE TOM STAGG